### TEMPLE et ux. v. MARTIN VENEER CO.
### No. 2210.

Court of Appeal of Louisiana. First Circuit.
March 4, 1941.

Morrison, Sims & Phelps, of Hammond, for appellants.

J. H. Inman, of Ponchatoula, for appellee.

OTT, Judge.

The plaintiffs are the father and mother of Lee Ora Temple, and they sue for compensation for 300 weeks on the basis of 65% of $14 per week, plus $250 medical expenses, $100 funeral expenses and $50 for contingent liability on account of an alleged accident and injury received by their son while working for the defendant company in 1937, which injury produced or aggravated a fatal disease resulting in the death of their said son. They allege that they were wholly dependent on his earnings for support.

The defendant denies that the deceased was ever injured or suffered an accident while in its employ, but avers that he was suffering from an incurable disease when he first began working for defendant and for that reason was given light work so as not to aggravate his condition; that the disease finally caused the deceased to quit work and receive treatment; that he later died from the effects of the disease.

Judgment was rendered in favor of the defendant rejecting plaintiffs' demands, and they have appealed.

It appears from the evidence that the deceased worked for the defendant for about a month in the latter part of March and the first part of April, 1937, operating a machine in nailing crates. The only evidence in the record indicating that the deceased suffered an injury or accident during this time is the testimony of his father, from whose testimony we quote as follows:

"Q. What was the nature of his—your son's employment? A. Well, he was nailing crates and different things, and was helping install this machine when he received the injury.

"Q. Was that machine installed at that time? A. Yes, sir, during the time he got injured.

"Q. When? How did you know your son was hurt? A. He came home and told me."

Objection to evidence was made and sustained.

"Q. Did you examine your son's person? A. Yes, sir.

"Q. What did you discover? A. Well, I discovered he had—he was swelled and complaining of pain and stinging, etc.

"Q. What portion of his body appeared to be injured? A. His privates."

■■ If the deceased son told his father immediately after he reached home from work that he had been hurt, such a statement would be admissible as a part of the res gestæ, and we think the court was in error in sustaining the objection as to statements made by the deceased to his father as to his receiving an injury while at work. See Butler v. Washington-Youree Hotel Co., Inc., et al., La.App., 160 So. 825. However, the error is harmless as it appears that the substance of what the deceased told his father is in the record.

According to the testimony of the father, his deceased son continued working for a few days and continued complaining, whereupon the boy was taken to Dr. Travis around the last of March or the first

of April. Dr. Travis testified that the deceased came to him for treatment around the middle of March and he treated him until about the 5th of April and he then sent the boy to the Charity Hospital to find out what was the matter with him. It was found at the hospital the deceased was suffering from a malignant cancer of the testicles, and he was operated on in April for this disease and stayed in bed for some time. He was able to get up again and worked for the defendant company a few days in September, 1937, his father testifying on this point as follows:

"Q. Then how long did he work in September? A. I presume five or six days, he came home suffering mightily.

"Q. Did you examine him again? A. Yes, sir.

"Q. What did you discover? A. There wasn't anything I could see, leg was beginning to swell on him at the time, too, he went back to the hospital."

The boy went back to the hospital and was again operated on November 3, 1937, and it was then found that his condition was hopeless. His trouble was then diagnosed as metastatic embryoma which resulted in his death in December following. In describing the disease which caused the death of the deceased, the physician uses the following language: "With evidence of such metastasis, the prognosis is, of course, hopeless. As to the etiology, such a malignancy arises from cell rests of embryonal tissue, abnormally placed from birth, in his case, in the testicle."

■ From both the lay and the medical testimony, we are convinced that this unfortunate boy died from a cancer and not from any injury resulting from an accident. The progress of this fatal disease ran true to form and the result was inevitable. Of course, if the cancer from which the deceased was suffering was in a dormant condition and as a result of an injury received by him in his work, the cancer was made active and its malignancy increased so as to hasten the death of the deceased, the injury would be compensable. Causey v. Kansas City Bridge Co., La.App., 191 So. 730.

■ The law is designed to require the employer to pay compensation to an employee or his dependents where the employee receives a personal injury by accident. Sec. 2 of Act 20 of 1914, as amended. Section 38 of this act, as amended by Act No. 38 of 1918, defines the meaning of an accident within the terms of the act, and it is well settled by the jurisprudence that one who claims compensation bears the burden of proving an accident and resulting injury.

■■ As already stated, the only evidence of an accident is the statement made by the deceased to his father that he hurt himself. But the evidence shows that at this time and for some time previous thereto, the deceased was suffering from this malignant cancer. It is possible that the exertion required in ordinary labor made his condition worse and caused him to suffer more pain. But the usual and ordinary exertions incident to his regular employment, even though they did increase his pain and aggravate his disease, would not make his condition compensable, unless some accident or unusual and unforeseen strain, jar or blow produced or contributed to the aggravated condition of a pre-existing disease. The deceased himself never made any complaint to his employer that he suffered an accident at any time while in its employ either in March and April nor in September, 1937. See Laughlin v. Magnolia Petroleum Company, La.App., 182 So. 178.

Finding the judgment herein appealed from to be correct, the same is hereby affirmed.